**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
ROBERTA FARBER                          :
                                        :
          Plaintiff,                    :          Civ. No. 03-4535 (DRD)
                                        :
          v.                            :          **O P I N I O N**
                                        :
CITY OF PATERSON, ET AL.,               :
                                        :
          Defendant.                    :
_____ :

James E. Patterson
Graham Curtin
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
          Attorney for Plaintiff


Alberta Rivas, Esq.
Lite DePalma Greenberg & Rivas, LLC
Two Gateway Center. 12th Floor
Newark, NJ 07102-5003
          Attorney for Defendant


**DEBEVOISE, Senior District Judge**

## I. PROCEDURAL HISTORY

Plaintiff, Roberta Farber ("Farber"), a former employee of the City of Paterson ("the

City"), was discharged on July 1, 2002. She brought suit against the City and several of its

officials and employees ("City Defendants") alleging that the discharge violated her rights under

the United States and New Jersey constitutions, and the public policy of New Jersey. The

1

individual City Defendants are Jose Torres, the City's Mayor; Elieser Burgos, the City's Business Administrator; and Marge DiPasquale, the City's Assistant Personnel Director.  She also brought suit against her union – which refused to take her grievance over the discharge to arbitration – for breach of its duty of fair representation.  Finally, she brought a conspiracy charge against both the union and the City Defendants.

The defendants all moved to dismiss.  On June 7, 2004, this Court dismissed without prejudice Farber's claims under the federal and state constitutions that the City Defendants deprived her of her property interest in her job without due process, ruling that a determination as to whether Farber actually had a property interest in her job was first required, and that the New Jersey Department of Personnel ("DOP") was the appropriate venue for this decision.  In May 2005, the DOP ruled against Farber, concluding that she failed to establish that she should retroactively be  considered a permanent employee. The Appellate Division of the New Jersey Superior Court later affirmed the DOP ruling.

This Court denied in all other respects the City Defendants' motion, and denied the union's motion to dismiss in its entirety.  The union was granted leave to file an interlocutory appeal on two issues: i) whether Farber's allegation that her political affiliation led to class-based invidiously discriminatory animus on the part of the union formed a cognizable claim for relief under 42 U.S.C. § 1985(3); and ii) whether Farber's claim that the union breached its duty of fair representation had been timely filed.  In its November 2005 decision, the Third Circuit held that § 1985(3) does not provide a cause of action for individuals claiming injury as a result of discrimination against them due to their political affiliation; and it affirmed that Farber's duty of fair representation claim was not time barred.  Farber v. City of Paterson, 440 F.3d 131 (3d. Cir.

2

2006).  Following this decision, Farber's claims against the union were dismissed for lack of jurisdiction, as she had no remaining federal claims against it.

The City Defendants now move for summary judgment on Farber's remaining claims.

## II. <u>FACTUAL BACKGROUND</u>[1]

### A. <u>Farber's Employment by the City of Paterson</u>

The City hired Farber in or about late 1990.  She became the Assistant Director for Economic and Industrial Development ("Assistant Director") in or about 1994 and held this position until she was discharged in 2002.  As Assistant Director, she reported to the Director of Economic and Industrial Development, who reported to the Director of Community Development who, in turn, reported to the Mayor of Paterson.

As Assistant Director, Farber served as Coordinator of the City's Urban Enterprise Zone program.  This was an administrative, rather than a policy-making, position; Farber's job was to implement policies established by others.

Farber was a dedicated employee who served during the administrations of both Mayor William Pascrell (a Democrat) and Mayor Martin G. Barnes (a Republican).  She received positive written and verbal performance evaluations throughout the course of her employment by the City.

### B. <u>Mayor Torres and the Newspaper Article</u>

Defendant Jose Torres ("Mayor Torres") was elected Mayor of Paterson in May 2002. He was sworn in on July 1, 2002.

---

[1] The facts recited here are adapted from those presented in the Opinion of this Court on Defendants' motion to dismiss, and from Plaintiff's brief opposing Defendants' Motion for Summary Judgment.

Farber was a supporter of former Mayor Barnes and his policies.  She openly expressed this support, going so far as to visibly participate in the Barnes mayoral campaign against Mayor Torres in May, 2002.  The defendants were aware of Farber's support for Barnes.

After his election, Mayor Torres expressed his intent to terminate the employment of supporters of the previous administration.  In a July 2, 2002 newspaper interview, Mayor Torres specifically identified Farber as one such supporter, and stated (falsely) that he had requested her resignation.

In the same interview, Mayor Torres made statements that Farber alleges intimated that her work (and the work of some of her colleagues whose employment had been terminated) was sub-standard, and that consequently she and they would be or had been terminated.  Specifically, he stated that his "goal is not to be a hatchet man, but if you can't cut the mustard, then I'm sorry."

Finally, Farber alleges that Mayor Torres implied in the interview that she and her colleagues were not hard-working when he vowed that under his administration there would be "no more two hour lunches."  Farber claims that these comments and their innuendos were false and adversely affected her reputation in the community.

## C. **Farber's Termination**

At 10:00 a.m. on July 1, 2002 – the day Mayor Torres was sworn in – Farber received a letter informing her that the City was terminating her employment, effective at noon that day. The letter did not include an explanation for the termination, or notification to Farber that she had hearing or appeal rights.

The letter stated that it was possible to so terminate Farber because she was a provisional

employee who did not possess job protection rights.  The letter was signed by the City of

Paterson's Assistant Personnel Director Marge DiPasquale ("DiPasquale") and dated June 28,

2002.  Copies of the letter were sent to Mayor Torres and City of Paterson Business

Administrator Elieser Burgos ("Burgos"), but not to Farber's superiors.[2]  After Farber was

terminated, and in spite of the City's contention that her position had been abolished, Farber

asserts that the City hired DiPasquale's niece to replace her.

On the same day that Farber was terminated, seven other City employees who were strong

public supporters of Barnes were also dismissed.  Torres explained in a July 4, 2002 newspaper

article that he terminated Farber because she had been active in the Barnes administration and

that the two administrations had different philosophies.  That Farber was dismissed because of

her ties to Barnes was confirmed by DiPasquale and City Councilman Thomas Rooney in their

depositions.

Mayor Torres later stated that Farber was fired as a money-saving measure, although

Farber's salary was in fact paid out of State funds and not by the City.  He also stated that Farber

had been fired for poor performance, although there is no specific evidence in the record to

support this assertion.

**D. <u>The Complaint</u>**

Farber filed a Complaint in this court in September 2003 seeking reinstatement,

compensatory and punitive damages, attorneys' fees and costs.  Farber alleges that she was

---

[2] Farber asserts that Mayor Torres had no authority to direct her termination because he had not yet been sworn in when the letter was written, and that DiPasquale had no authority to issue the letter without the direction of Farber's superiors (which she did not have).  These are complaints she presumably would have brought up at a hearing had she been provided with one.

terminated because of her affiliation with and support of former Mayor Barnes' administration, in violation of her rights of association and free speech. (She filed an Amended Complaint on June 9, 2004.) As a result of the 3rd Circuit and DOP rulings mentioned above, and this Court's dismissal of Farber's claims against the union, the following causes of action stated by Farber in her Amended Complaint remain in front of this court:

(1) a 42 U.S.C.§1983 ("§1983") claim against the Defendants City of Paterson and Mayor Torres that the latter's defamatory comments, made in his official capacity as Mayor of Paterson, caused her to be deprived of her Fourteenth Amendment liberty interest in her reputation without due process of law;

(2) a §1983 claim against Defendants Mayor Torres, Burgos and Di Pasquale that, acting in both their official and individual capacities, they participated in Farber's wrongful termination, thus depriving her of a property interest without due process of law, in violation of the Fourteenth Amendment and the analogous provisions of the New Jersey Constitution.

(3) a § 1983 claim against the above Defendants that her termination was in violation of her First Amendment rights;

(4) a claim against the above Defendants that her termination was in violation of the analogous provisions of the New Jersey constitution (N.J. Const. Art. I, ¶¶ 5 & 6).

[In light of the Court of Appeals decision mentioned above, this Court will grant summary judgment to Defendants on Farber's § 1985(3) claim that the City Defendants, motivated by political animus, conspired to deny her First Amendment rights of freedom of expression and association, on the grounds that Plaintiff does not state a viable cause of action.]

**E. The Motion for Summary Judgment**

The City Defendants now move for summary judgment on the grounds that the language used by Torres does not amount to defamation, and that even if it did, any harm suffered by Farber did not rise to a constitutional deprivation of her liberty interest; that DiPasquale and Burgos engaged in no wrongful conduct in connection with Farber's termination; and that her termination was not wrongful, as it was not attributable to either federal or state constitutionally protected conduct.

## III. DISCUSSION

**A. Standard of Review**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

**B. The Defamation Claim Against Mayor Torres and the City of Paterson**

Defendants first argue that statements made by Mayor Torres as reported in the July 2,

2002 edition of the Paterson Herald News are not defamatory, and thus did not cause Farber to suffer a deprivation of a liberty interest without due process under the Fourteenth Amendment of the U.S. Constitution.  Plaintiff responds that her liberty interest claim satisfies the "stigma-plus" test, first laid down in Paul v. Davis, 424 U.S.693 (1976), which requires her to show a stigma to her reputation and some accompanying infringement of a protected interest.  In the public employment context, this has been interpreted to mean that an employer will have violated a liberty interest in reputation only if it defames an employee (1) in the course of or in connection with discharging her, or (2) in such a way as to negatively affect her ability to take advantage of future employment opportunities.  See, e.g., Edwards v. California Univ., 156 F.3d 488, 492 (3d Cir. 1998); Robb v. Philadelphia, 733 F.2d 286, 293-94 (3d. Cir. 1984).

New Jersey courts define defamation in accordance with the Restatement (Second) of Torts (1977).  DeAngelis v. Hill, 180 N.J. 1, 12 (2004).  The Restatement provides that liability for defamation requires (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.  Restatement (Second) of Torts, supra, § 558.  Furthermore, a defamatory statement is one that subjects a person to ridicule or contempt, or is injurious to their reputation.  DeAngelis, 180 N.J. at 13; Taj Mahal Travel v. Delta Airlines, 164 F.3d 186, 189 (3d Cir. 1998).

With regards to the first element of the Restatement, it is for the court to determine as a matter of law whether a communication is defamatory, assuming it is susceptible of only one meaning.  Id., § 614; DeAngelis, 180 N.J. at 14; Taj Mahal Travel, 164 F.3d at 189.  If the words are susceptible of either a defamatory or non-defamatory  meaning, however, resolution must be

left to the trier of fact.  Id.; Romaine v. Kallinger, 109 N.J. 282, 290 (1988).  In making this determination, the court must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement.  Ward v. Zelikovsky, 136 N.J. 516 (1994).

The content analysis requires an evaluation of the language in question according to the fair and natural meaning that would be given it "by reasonable persons of ordinary intelligence." Romaine, 109 N.J. at 290 (1988).

An analysis of verifiability requires distinguishing between statements of fact and opinion.  Ward, 136 N.J. at 530; Kotlikoff v. The Community News, 89 N.J. 62, 67 (1982).  Only if a statement suggests "specific factual assertions that could be proven true or false" can it qualify as actionable defamation.  Ward, 136 N.J. at 531; see also Minerva Marine, Inc. v. Spiliotes, 2005 U.S. Dist. LEXIS 41854 (D.N.J. 2005).  Loose or figurative speech is less likely to imply specific facts and thus be deemed actionable.  Ward, 136 N.J. at 532.

Courts must also consider the context in which the statement appears when determining what a reader's reasonable interpretation would be.  DeAngelis, 180 N.J. at 15; Restatement (Second) of Torts, supra, § 566 comment c.  This involves assessing the "impression created by the words used, as well as the general tenor of the expression, as experienced by a reasonable person." Ward, 136 N.J. at 532.

Turning to the newspaper article containing the allegedly defamatory language identified by Farber (Record, Exh. B), we look at its contents from the position of the typical reader, presumably a resident of the city of Paterson.  Titled "Torres Gets Down to Business," the gist of the article is a synopsis of an interview with Jose Torres, the newly elected Mayor of the City of Paterson, explaining how he hopes to bring about greater efficiency and accountability within the

City administration.  The article contains excerpts of an interview with Mayor Torres, as well as general details about the mayor's plans for reorganizing the City office.

In particular, the article informs readers of the mayor's intention to analyze the job descriptions and self-assessments he asked each city employee to complete, "to see whether departments should be reorganized or consolidated."  It then mentions Mayor Torres' plans to combine the city's economic agencies into one department, organize management training seminars, and various other initiatives.

Midway through the article, the reporter quotes Mayor Torres as saying: "Starting next week, there will be a new rule: No more two-hour lunches." Mayor Torres follows this up with: "My goal is not to be a hatchet man, but if you can't cut the mustard, then I'm sorry." Three paragraphs later, the article reports that "Former mayor Martin G. Barnes' spokesman Bob Grant, mayoral office aide Ralph Gambatese Sr., legal counsel Yolanda Adrianzen and Urban Enterprise Zone Coordinator were asked to resign, Torres said."

1. Content

Farber claims that Mayor Torres' statements in the article broadcast the false inference that she was terminated because she was lazy and incompetent.  Viewing the statements in isolation, had Mayor Torres referred to Farber specifically as being "unable to cut the mustard" and prone to "two-hour lunches," a reasonable Paterson Herald reader would be warranted in attributing to those statements the defamatory meaning she suggests they convey.

But that is not the case here.  Rather, the reasonable reader is confronted with a couple of pointed statements about Mayor Torres' intentions, followed shortly (but not directly) by a list of employees, including Farber, who were "asked to resign."  Where an allegedly defamatory

10

statement does not explicitly name the plaintiff, it must nevertheless be "of and concerning the plaintiff," such that it appears to the reasonable person that it referred to the plaintiff.  Taj Mahal Travel, 164 F.3d at 189; see also Gnapinsky v. Golden, 23 N.J. 243, 254 (1957). This determination cannot be made without examining the context within which the statements were made, as discussed below.

2. Verifiability

        Nor is it clear that Mayor Torres' statements satisfy the verifiability test.  If Mayor Torres had directly accused Farber of "not cutting the mustard" in terms of her work performance, and of having taken too many "two hour lunches," such accusations might reasonably construed as assertions of fact rather than opinion; one can imagine both sides coming up with evidence in an attempt to show them true or false.  But uttered in a more general manner, as by Mayor Torres in this instance, they do not rise to the level of "specific factual assertions" required by the court in Ward.  Rather, the statements are "loose and figurative speech" that fails to allege specific facts about what Farber did and did not do.

3. Context

        Ultimately, Plaintiff's argument fails because, viewed in the context within which they were published, no reasonable reader would infer that Mayor Torres' comments were in any way connected to Farber.  There are three plausible ways that a reasonable reader might interpret Mayor Torres' statements, none of which are defamatory towards Farber.

        First, the tenor of the article suggests Mayor Torres is talking about his future plans. Like any newly-elected politician, he is keen to present himself as someone who plans to "shake up" the establishment.  When Mayor Torres says "my goal is not to be a hatchet man, but ... ," he is

simply talking about how he would like to be perceived as he moves forward in his new role.

Second, having just mentioned that he plans to review the job descriptions and self-assessments written by the city employees in his purview, Mayor Torres' comments could be construed as nothing more than a couple of colorful sound bites intended to help press home his point, namely, that city employees are on notice that they will be expected to measure up or face the consequences.

Third, the paragraph that lists the names of the people fired by Mayor Torres, including Farber, begins "Former mayor Martin G. Barnes' spokesman Bob Grant, mayoral office aide Ralph Gambatese Sr. ..." The clear inference to be drawn by a reasonable reader is that the people mentioned in the list were terminated because of their ties to the former administration.  This impression is buttressed by Mayor Torres' false - at least in Farber's case - claim that they were "asked to resign," a euphemism suggesting that their departure was a consequence of political machinations.  A couple of paragraphs later, the reporter notes that "Marge Cherone, who was finance director under former Mayor William Pascrell Jr. got her old job back," completing the picture in the reader's mind that these hirings and firings were nothing other than a politically-motivated changing of the guard.

On this basis, the Court finds that Mayor Torres' comments did not constitute defamation of the Plaintiff.  As such, it is unnecessary to consider the issue of whether those statements caused Farber to suffer a deprivation of a liberty interest under the Fourteenth Amendment.  The City Defendants' motion for Summary Judgment on Plaintiff's Fourteenth Amendment claim is granted.

**C. Wrongful Termination Claims Against Defendants Burgos and DiPasquale**

Farber alleges that DiPasquale, the Assistant Personnel Director, and Burgos, the Business Administrator, were in violation of §1983, in that they were active participants in her wrongful termination, in both their official and individual capacities, and thus deprived her of her First Amendment rights of freedom of expression and association.  (She also makes this claim under the analogous provisions of the New Jersey constitution.)  In moving for summary judgment, the City Defendants assert that Farber has provided no credible evidence to support these allegations.

Personal Capacity

To prevail against a defendant acting in his individual capacity under §1983, a plaintiff must show that the defendant was personally involved in the alleged wrongs.  Thomas v. Independence Twp., 463 F.3d 285 (3d Cir. 2006); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  Id.

*DiPasquale*

Farber's evidence of DiPasquale's involvement in her termination consists of a single allegation, namely that, based on the deposition of Mayor Torres (Record, Exh. R at 24-25), DiPasquale told Torres, in response to his question about Farber's rights were she to be terminated, that Farber was a provisional employee and so her employment status was not protected.  (Opp. Brief at 8).  Although DiPasquale denies this allegation (Record, Exh. Q at 18-19), even if we hold it to be true, this does not rise to "personal involvement" in Farber's

13

termination.  The Record shows that Mayor Torres had devised plans for a "smooth transition" that involved termination of a number of staff members from the previous administration. (Record, Exh. R at 5-10.)  He decided which of these employees to fire following discussions with some of the incoming members of his administration.  DiPasquale was not present at these meetings. Id.  Mayor Torres then informed DiPasquale, that he was planning to fire certain individuals and asked her to draft the memorandum informing those employees of their termination; in doing so, DiPasquale, in her position as Acting Personnel Director, presumably provided her soon-to-be-boss with details of their employment status.  If DiPasquale did tell Mayor Torres that Farber was a provisional employee, that would be entirely expected of someone in her role, and in any event proved to be an accurate statement.

Plaintiff has not provided any specific evidence that DiPasquale personally directed or acquiesced to her termination. As such, the charge that DiPasquale participated in her personal capacity in Farber's firing cannot be sustained.

*Burgos*

Farber's evidence against Burgos is similarly scant. She relies largely on Mayor Torres' testimony as showing that Burgos was involved in the discussions about personnel cuts, and had provided Mayor Torres with information about the cost savings that could be achieved by firing her.  Farber argues that this information was false, because her salary was disbursed from state and not City funds.  (Opp. Brief at 8).

In fact, a review of Mayor Torres' testimony suggests a version of events somewhat at odds with Farber's portrayal.  According to Mayor Torres' description of the meetings he had

14

with his team prior to his inauguration, the focus of those discussions was the large financial

shortfall faced by the city.   While Burgos was present at these meetings, it was the Financial

Controller and the Budget Officer who provided the details about the extent of the shortfall and

personnel cuts that wold be required.  (Record, Exh. R at 9-10.)  Mayor Torres testified that

Farber was only one of a group of six employees that he planned to terminate, and that the issue

of whether she individually should be retained or dismissed was never raised during the

conferences with his staff .  (Record, Exh. R at 10-11.)  He also indicated that it was "Finance

budget officers" who provided the information about Farber's salary and the mistaken notion that

her salary was drawn from both state and city sources.  (Record, Exh. R at 12-13.)  This supports

Burgos' contention that he was unaware of the exact breakdown of Farber's salary between city

and state, because the Director of Finance was the person responsible for the budgets of the

programs receiving state grants.  (Record, Exh. S at 36.)

       Viewing this evidence in the light most favorable to the plaintiff, a reasonable fact finder

could not conclude that Burgos had personal involvement in Farber's firing with the required

"particularity."  Mayor Torres clearly states that he made the decision to terminate Farber

himself.  (Record, Exh. R at 15-16.)  Even if Burgos provided Mayor Torres with general

information about Farber's salary and employment status, that would hardly be extraordinary for

someone with the title of Business Administrator, and to whom the Director of Personnel

reported.  (Record, Exh. S at 23-24.)  Thus, the charge that Burgos participated in his personal

capacity in Farber's firing also fails.

2. Official Capacity

       As established above, DiPasquale and Burgos had no personal involvement in Farber's

dismissal.  Therefore, the question of whether these defendants should be held liable for actions taken in their official capacity is moot.

Accordingly, Defendants' motion for Summary Judgment on Plaintiff's claims against Burgos and DiPasquale is granted.

**E. The First Amendment Claim Against Torres and the City of Patterson**

Farber asserts that she was terminated by Mayor Torres because of her public support for the previous administration of Mayor Barnes, which, under § 1983, constituted a violation of her rights to freedom of expression and association as guaranteed by the First Amendment.  These defendants argue that the record shows only that Farber was dismissed for financial reasons in light of her status as a provisional employee.

The Court of Appeals applies "a well-established three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment." Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005); see also Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006).  First, the employee must demonstrate that she engaged in activity that is in fact protected.  Id. Second, the employee must show that "the protected activity was a substantial factor in the alleged retaliatory action." Hill, 411 F.3d at 118.  Third, if the employee is successful in step two, the burden shifts to the employer to demonstrate that the alleged retaliatory action would have been taken even in the absence of the protected conduct.  Id.

*Step One: Was Farber engaged in a protected activity?*

Whether a plaintiff's statements are protected by the First Amendment is a question of law for the Court.  See Azzaro v. County of Allegheny, 110 F.3d 968, 975 (3d. Cir. 1997).  As

16

part of its analysis under this step, the court must first determine the content of the relevant
speech and other conduct purportedly subject to protection.  See generally Waters v. Churchill,
511 U.S. 661.  In her Complaint, Farber states that she was a public supporter of Mayor Barnes,
and that she openly expressed her belief that "Barnes' policies were good for the City of
Paterson."  (Record, Exh. A at 6).  As the defendants do not dispute her participation in these
activites, the Court then considers whether that conduct is protected under the First Amendment,
which it will be only if two conditions are satisfied.

   First, her conduct must address a "matter of public concern," which is to be determined
by the "content, form and context of a given statement, as revealed by the whole record."
Azzaro, 110 F.3d at 976.  While the determination as to whether particular activities are matters
of public concern is thus a factual one, the court "should look to the motive of the speaker" and
consider "whether the speech was calculated to redress personal grievances or whether it has a
broader public purpose."  Lewis v. Cohen, 165, F.3d 154, 163-64 (3d Cir. 1999); see also
Connick v. Meyers, 461, U.S. 138, 146 (1983) ("A public employee's speech addresses a matter
of concern when it relates to an issue of political social or other concern to the community.")

   Even without specific examples of Farber's expressions of support for Barnes, it seems
beyond dispute that contributions to political discourse are matters of public concern.  "Political
belief and association constitute the core of those activities protected by the First Amendment."
Elrod v. Burns, 427 U.S. 347, 356 (1976).  "The First Amendment protects political association
as well as political expression."  Id; see also Curinga v. City of Clairton, 357 F.3d 305, 311 (3d
Cir., 2004).  There is nothing in the record to suggest that Farber's activism had any motive other
than to engender support for Barnes.

Turning to the second condition, the value of Farber's expression must outweigh "the government's interest in the effective and efficient fulfillment of its responsibilities. Azzaro, 110 F.3d at 976. In making this assessment, the Court employs the balancing test set out in Pickering v. Bd. of Educ., 391 U.S. 563 (1968), by which it balances an employee's interest in speaking about a matter of public concern, and the value to the community of her being free to speak on such matters, against the government's countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption. Id., at 980; McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005). "The more tightly the First Amendment embraces the speech, the more vigorous a showing of disruption must be made." Id. at 365.

Given the strong First Amendment protection afforded to political activities described above, the City defendants would have to show that Farber's vocal support of Barnes caused a substantial amount of disruption at the City workplace to render her speech unprotected. Defendants make no such showing here; indeed, they do not directly contest Farber's claim that her conduct was protected.[3] Consequently, the Court concludes for the purposes of this analysis that Farber's conduct warranted First Amendment protection.

*Step Two: Were Farber's protected activities a substantial factor in the alleged retaliatory action?*

A government employer "retaliates" against an employee for protected speech only when

_____

[3] The Court in Elrod made an exception for "dismissals based on political affiliation" of employees said to be in "policymaking" positions. Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir., 2004). In support of her claim that her conduct was protected, Farber argues that she was not a policymaker (Plaintiff's Brief in Opposition, at 2), and Defendants do not allege otherwise.

the speech was a substantial or motivating factor in the alleged retaliatory action. <u>Baldassare v. New Jersey</u>, 250 F.3d 188, 194-95 (3d Cir. 2001). To show that her protected activity was a substantial factor giving rise to the subsequent adverse employment action, the plaintiff must show a causal link between her activity and the retaliatory action. <u>See, e.g.</u>, <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003). A "temporal proximity" between the protected activity and the retaliatory action may be evidence of causation (<u>Id.</u> at 114), but such timing must be "unusually suggestive of retaliatory motive before a causal link will be inferred." <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir. 2003). Furthermore, for the protected conduct to be considered a substantial factor in a decision, "the decisionmakers must be aware of the protected conduct." <u>Ambrose v. Township of Robinson</u>, Pa, 303 F.3d 488, 493 (3d Cir. 2002).

Where there exists "a material dispute of fact as to whether [plaintiff's conduct was] ... a motivating factor in the discharge decision," the substantial factor inquiry presents a question of fact for the jury. <u>Azzaro</u>, 110 F.3d at 981; <u>McGreevy</u>, 413 F.3d at 364.

In her brief opposing defendants' motion for summary judgment, Farber brings a number of arguments to support her claim that her political activities on behalf of Mayor Barnes were a substantial factor in her termination. Each of these is discussed below.

1. The July 4, 2002 Newspaper Article

The Paterson Herald News of July 4, 2002 features an article about Farber's dismissal. (Record, Exh. O). In the article, Mayor Torres was reported to have described Farber's termination as "legitimate and necessary" because "it appears she had a lot to do behind the scenes in the past administration, and there's a difference in the administrations' philosophies."

19

Plaintiff argues that these statements create a strong inference that she was terminated because of her support of the prior administration.  A reasonable juror might also reach this conclusion; the City's response that the language in the article does not "credibly" support Farber's argument as to why she was dismissed is unsubstantiated.

## 2.  DiPasquale's Testimony

DiPasquale, the Acting Personnel Director, testified that Mayor Torres "stated it many times" that "anybody that was connected to either Marty Barnes ... he no longer wanted in his administration."  (<u>Id.</u> at 15).  DiPasquale further admitted that Mayor Torres had been told that Farber was "friendly with the mayor," (<u>Id.</u> at 17), implying that the decision maker was indeed aware of the employee's protected conduct prior to his decision, as required by *Ambrose* for establishing the substantial factor prong.

Defendants respond by quoting DiPasquale's' testimony that Mayor Torres did not tell her his specific reasons for firing Farber.  (Record, Exh. Q at 71).  They argue that this acknowledgment is sufficient to counter DiPasquale's hearsay statement that she knew "the reason why" Farber was fired, even though she "didn't hear it in words" from Mayor Torres.  (<u>Id.</u> at 14).

The somewhat contradictory nature of DiPasquale's testimony does not suggest that Farber's political activities were definitely a substantial factor in her termination.  However, it does form the basis of a factual dispute that ought to be argued before a jury.

## 3.  Councilman Rooney's Testimony

Councilman Thomas Rooney Jr. was a member of the Paterson City Council at the time

Farber was fired, and is a political ally of Mayor Torres.  During his deposition, Rooney was asked if he knew why Farber was fired, and answered that Mayor Torres "wanted somebody else .. [h]e didn't want somebody there in the position that had tried to prevent you from being elected."  (Record, Exh. H at 19).  Farber brings this statement as "unequivocal" proof that she was terminated because of her political affiliation.  (Plaintiff's Brief in Opposition, at 14.)

However, Rooney also testified that "I was not involved" in Farber's termination, and that he did not discuss it with anyone from the Torres administration; nor did he learn about her firing until "some time after it happened."  It is hard to escape the conclusion suggested by defendants here that Rooney's statements amount to nothing more than rank speculation as to Mayor Torres' motives for firing Farber, and do not assist her in establishing a causal link between her conduct and her dismissal.

4.  The Timing of Plaintiff's Termination

Farber notes that she was terminated on July 1, 2002, the same day that Mayor Torres assumed office.  Furthermore, she was one of a group of eight persons fired that day, all of whom were public supporters of the prior administration.  Thus there is undoubtedly a "temporal proximity" between her protected conduct and the retaliatory action of the City, which constitutes evidence of a causal link between the two events.

However, whether the timing of her firing definitively establishes causation requires that it be "unusually suggestive of retaliatory motive." For their part, Defendants argue that Farber's dismissal at that point in time was primarily for financial reasons, as the City faced a "real financial crisis when Torres took over."  Farber's status as a provisional employee made her an

easier target than others, as "she did not have the same rights to her position as someone who obtained civil service protection. (Plaintiff's Reply Memorandum, at 7.) In addition, Mayor Torres was "familiar with [Farber's] work" from earlier times, and dismissed her in part for unsatisfactory performance. Id.[4]

Farber counters that Defendants' arguments are merely "shifting excuses" for her termination. (Plaintiff's Brief in Opposition, at 16.) She points to evidence of the City filling her position soon after her departure as contradicting Defendants' claim that her position was to be abolished under the new administration. Id. at 17-19. She observes that her firing did not save the City money, as her salary was drawn from state grants, and her department now has a larger budget than at the time of her departure. Id. at 19-20. Finally, Farber attributes a pretextual motive to the City's claim that she was fired for poor performance, given the excellent evaluations she received throughout the course of her employment and absence of any written evidence to the contrary. Id. at 20-21.

Thus, there is substantial evidence on both sides as to whether the City's motive for terminating Farber at that particular point in time was clearly driven by a retaliatory motive. Resolution of this issue is another for which a jury would be best situated.

5. The July 2, 2002 Newspaper Article

Finally, Farber contends that the contents of an article that appeared in the July 2, 2002

_____

[4] If Farber successfully establishes that her association with Mayor Barnes was a substantial factor in the decision to terminate her, the Court will also examine Defendants' arguments regarding their motives for firing Farber under the third step of this analysis. At that step, the defendant can try to show that some other factor unrelated to the protected activity was the but-for cause of the termination. Hill v. City of Scranton, 411 F.3d 118, 126 (3d Cir. 2005).

edition of the Paterson News Herald, the subject of her Fourteenth Amendment claim discussed at length above, reinforce her claim that her termination was a consequence of Mayor Torres' desire to replace supporters of the former mayor with his own people.  (Plaintiff's Brief in Opposition, at 15.) On his deposition, Mayor Torres conceded the accuracy of the newspaper article, thus overcoming hearsay objections to its use as evidence.

Defendants argue that the article requires a "tortured reading" to support her theory that she was dismissed because of her support of the prior administration.  (Defendants' Brief, at 16). Although Farber cites Torres' proclamation of "a new era of efficiency and accountability" and an end to "two-hour lunches" as suggesting that he had engaged in "classic patronage housekeeping," it is hard to see how such an inference can be drawn on the basis of these and the other statements contained in the article.  If anything, such statements back the defendants' claim that Farber was fired for economic reasons.

*Step Three: Would the City fire have fired Farber regardless of her protected activity?*

Step Three of the analysis is only required when the plaintiff has made a definitive 'substantial factor' showing in Step Two.  This step involves an assertion by an employer of an "affirmative defense," by which it tries to show that it would have dismissed the employee even if she had not engaged in the protected conduct.  Nicholas v. Pennsylvania State University, 227 F.3d 133, 144 (3d Cir. 2000).

As discussed above, Defendants argue that Farber was fired primarily as part of the "very serious efforts" by the City to rein in expenditures following Mayor Torres' election; as such, she would have been dismissed regardless of her support for the former mayor.  Farber counters that

23

the economic justifications cited by the City were just a pretext for the real reason for her

termination, namely, her active involvement in Mayor Barnes' reelection campaign.  As in Step

Two, a determination of this issue by a jury is appropriate.

In summary, the City Defendants are unable to support their contention that, as a matter

of law, when viewing the facts in the light most favorable to the plaintiff, her termination was not

attributable to her protected conduct.  Farber presents sufficient evidence such that reasonable

jurors might disagree about the merits of her claim that her political support for Barnes was a

substantial factor in her termination.[5]  As such,  Defendants' motion for summary judgment on

this count is denied.

**E. The Freedom of Speech and Association Claims against City Defendants under the New Jersey Constitution**

The legal and factual issues associated with Farber's claim that Defendants violated her

rights under the  New Jersey Constitution violations are substantially similar to those of her First

Amendment claim discussed above.  Therefore,  we need not proceed with an analysis of the

evidence Farber brings in support of her state law claim.  As summary judgment on Farber's First

Amendment motion has been denied, the motion on her corresponding state law claim must also

fail.

---

[5] Defendant Torres has not specifically asserted a qualified immunity defense.  This defense is not available for defendants whose actions are such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  As there is a clear factual dispute regarding Torres' motivation for firing Farber, Torres cannot obtain summary judgment on qualified immunity grounds.

## *CONCLUSION*

For the reasons set forth above, Defendants' motion for summary judgment on Plaintiff's defamation claim against Mayor Torres and the City of Paterson, and the claims against DiPasquale and Burgos in both their official and individual capacities, are granted.  Defendants' motion for summary judgment on Plaintiff's § 1985(3) claim that Defendants, motivated by political animus, conspired to deny her First Amendment rights of freedom of expression and association, is also granted.  Summary judgment on Plaintiff's claim that the remaining City Defendants violated her First Amendment rights of freedom of expression and association, and on her claim under the analogous provisions of the New Jersey Constitution, is denied.


　　　　　　　　　　　　　　　　　　　　　__/s/  Dickinson R. Debevoise__
　　　　　　　　　　　　　　　　　　　　　DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: November 29, 2006

25